IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| WINNEBAGO TRIBE OF NEBRASKA; OMAHA TRIBE OF NEBRASKA; VICTORIA KITCHEYAN, CHEYENNE ROBINSON, BRIAN CHAMBERLAIN, RONA STEALER, JAMES LOUIS LAROSE, ARIC ARMELL, LYNELLE BLACKHAWK, ESTHER MERCER, and GREGORY PHILLIPS,<br><br>Plaintiffs,<br><br>v.<br><br>THURSTON COUNTY, NEBRASKA, THURSTON COUNTY BOARD OF SUPERVISORS, GLENN MEYER, in his official capacity as Chairman; MARK ENGLISH, in his official capacity as Vice Chairman; GEORGIA MAYBERRY, in her official capacity as Supervisor; JAMES PRICE, SR., in his official capacity as Supervisor; DAVIN FRENCH, in his official capacity as Supervisor; ARNIE HARLAN, in his official capacity as Supervisor; JIM MUELLER, in his official capacity as Supervisor; and PATTY BESSMER, in her official capacity as County Clerk;<br><br>Defendants. | 8:23CV20<br><br>MEMORANDUM AND ORDER |

In this 42 U.S.C. § 1983 case, plaintiffs Winnebago Tribe of Nebraska ("Winnebago Tribe"), Omaha Tribe of Nebraska ("Omaha Tribe"), Victoria Kitcheyan, Cheyenne Robinson, Brian Chamberlain, Rona Stealer, James Louis LaRose, Aric Armell, Lynelle Blackhawk, Esther Mercer, and Gregory Phillips (collectively, "plaintiffs") allege defendants Thurston County, Nebraska ("County"); Thurston County Board of Supervisors; Glenn Meyer, in his official capacity as Chairman; Mark English, in is official

capacity as Vice Chairman; Georgia Mayberry, in her official capacity as Supervisor; James Price, Sr., in his official capacity as Supervisor; Davin French, in his official capacity as Supervisor; Arnie Harlan, in his official capacity as Supervisor; Jim Mueller, in his official capacity as Supervisor; and Patty Bessmer, in her official capacity as County Clerk (collectively, "defendants") violated the plaintiffs' rights under the Fourteenth and Fifteenth Amendments to the United States Constitution and Section 2 of the Voting Rights Act of 1965 ("VRA"), 52 U.S.C. § 10310, by adopting a redistricting plan that "dilutes the voting strength of the Non-Hispanic American Indian or Alaska Native voters of a single race . . . and voters from the reservations of the" Winnebago and Omaha Tribes. In support of their vote-dilution claim, the plaintiffs provide what they describe as an "illustrative plan to support their allegation that Native voters are 'sufficiently large and geographically compact to constitute a majority in a single-member district' as required by *Thornburg v. Gingles*, 478 U.S. 30, 50 (1986)."

The plaintiffs seek declaratory and injunctive relief under 28 U.S.C. §§ 2201 and 2202. Section 2201(a) provides in pertinent part, "In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." Section 2202 authorizes "[f]urther necessary or proper relief."

Now pending before the Court is the plaintiffs' motion to dismiss the defendants' counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6) and "Article III, Section 2 of the United States Constitution" (Filing No. 10). The plaintiffs state, "In their Counterclaim, Defendants purport to allege a single cause of action under the Declaratory Judgment Act, seeking a declaratory judgment that the County's redistricting plan complies with, and Plaintiff's [sic] proposed plan violates, the [VRA] and the Fourteenth and Fifteenth Amendments." As the plaintiffs see it, the Court should dismiss the defendants' counterclaim with prejudice because the defendants (1) "lack standing to bring their

Counterclaim," (2) "have failed to state a claim for which relief can be granted," and (3) raise a counterclaim "that is not a justiciable case or controversy under Article III of the Constitution." The arguments are unavailing.

"Whenever an actual controversy exists between the parties and the circumstances indicate that declaratory relief may be an appropriate method for the settlement of the conflict, a counterclaim or a crossclaim for a declaratory judgment" is generally permitted. *See* 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1406 (3d ed. 2010); *see also* Fed. R. Civ. P. 13. To be sure, the defendants' reciprocal counterclaim may be largely redundant given the analysis required by the claims the plaintiffs raise and the relief they seek, and the defendants' request for a declaration that the plaintiffs' proposed plan violates the VRA and the Fourteenth and Fifteenth Amendments may be a bridge too far. But the Court is not convinced any such flaws require dismissal of the defendants' counterclaim at this early stage.

The plaintiffs acknowledge "the unremarkable proposition that courts will evaluate proposed maps to determine whether a remedy is possible for an improperly drawn redistricting map." *See*, *e.g.*, *Stabler v. County of Thurston*, 129 F.3d 1015, 1025 (8th Cir. 1997) ("Any remedy drawn in order to correct a § 2 violation should 'steer clear of the type of racial gerrymandering proscribed in [*Miller v. Johnson*, 515 U.S. 900 (1995)].'" (quoting *Harvell v. Blytheville Sch. Dist. No. 5*, 71 F.3d 1382, 1391 (8th Cir. 1995) (en banc))). And the Court is satisfied it can adequately account for the proper line of demarcation on that issue and keep these matters straight until the heavy dust settles in this case.

The plaintiffs' hyperbolic characterization of the defendants' relatively formulaic counterclaim as a "retaliatory lawsuit against private citizens who sue the government to enforce their rights under Section 2 of the [VRA]" is without merit.

For the foregoing reasons, the plaintiffs' motion to dismiss (Filing No. 10) the defendants' counterclaim is denied.

Dated this 27th day of April 2023.

BY THE COURT:

Robert F. Rossiter, Jr.
Chief United States District Judge